IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-156-D

| | |
|---|---|
| JOANN ARTIS STEVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **ORDER** |
| | ) |
| TOWN OF SNOW HILL, N.C., | ) |
| COUNTY OF GREENE, N.C., and | ) |
| LENOIR COMMUNITY COLLEGE | ) |
| AND FOUNDATION, N.C., | ) |
| | ) |
| Defendants. | ) |

On October 31, 2019, Joann Artis Stevens ("Stevens" or "plaintiff"), proceeding pro se, filed

a motion to proceed in forma pauperis in an action against the Town of Snow Hill, N.C. ("Snow

Hill"), County of Greene, N.C. ("Greene County"), and Lenoir Community College and Foundation,

N.C. ("LCC") (collectively, "defendants") [D.E. 1]. On September 17, 2020, Stevens filed a

complaint asserting claims under 42 U.S.C. § 1983, 18 U.S.C. §§ 241, 242, and 245, and North

Carolina state law [D.E. 10]. On October 19, 2020, the court adopted Magistrate Judge Robert B.

Jones, Jr.'s Memorandum and Recommendation ("M&R"), granted Stevens's motion to proceed in

forma pauperis, and dismissed Stevens's claims arising under 18 U.S.C. §§ 241, 242, and 245 [D.E.

9, 12]. On January 11, 2021, LCC moved to dismiss Stevens's complaint for failure to state a claim

upon which relief can be granted [D.E. 31], and filed a memorandum and exhibits in support [D.E.

32]. On January 13, 2021, Greene County and Snow Hill also moved to dismiss for failure to state

a claim [D.E. 36, 37], and filed respective memoranda and exhibits in support [D.E. 35, 38]. On

February 4, 2021, Stevens responded in opposition to LCC [D.E. 40]. The following day, Stevens

responded in opposition to Snow Hill and Greene County and filed exhibits in support [D.E. 41, 42].[1] On February 18, 2021, LCC replied [D.E. 43]. The following day, Snow Hill replied [D.E. 44]. On April 13, 2021, Stevens moved for entry of default judgment against Greene County [D.E. 45]. On April 14, 2021, Greene County responded in opposition [D.E. 46]. As explained below, the court grants defendants' motions to dismiss, denies Stevens's motion for entry of default judgment, and dismisses Stevens's complaint.

I.

Stevens's claims center around her desire to lead community development and historical preservation efforts concerning the historic Rosenwald School in Snow Hill, North Carolina. See [D.E. 10] 4–5. In 1997, the Greene County Board of Education deeded land containing the school building, a baseball field, and various other buildings to LCC. See [D.E. 32-1, 35-2]. On July 1, 2004, LCC leased the Rosenwald school to William Warren ("Warren"). See [D.E. 32-3]. In October 2013, LCC terminated Warren's lease due to the hazardous condition of the building. See [D.E. 32-4, 32-5].

Stevens alleges that she acted as the chief executive officer of the Rosenwald Center, a community development organization in Snow Hill. See Compl. [D.E. 10-1] 2–3. Stevens claims that the Rosenwald school building was "given to [Stevens] by Greene County Board of Education in 1999 after Hurricane Floyd[.]" Id. at 5. According to Stevens, in 2004, LCC locked Stevens out of her office in the Rosenwald school building. See id. at 3, 10. Stevens also alleges that on October 14, 2019, she was not permitted to speak at a public forum held by Snow Hill. See id. at 8–10.

---

[1] The court will not address any new arguments that Stevens raises in her response. Statements in briefing that "raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011).

2

Stevens names LCC, Greene County, and Snow Hill as defendants. See [D.E. 10] 3. In count four, Stevens seeks relief against all defendants for violating her right to freedom of speech under the First Amendment. See Compl. at 8–9. In count five, Stevens seeks relief for defamation against all defendants. See id. at 9–10. In count six, Stevens seeks relief for "discrimination and failure to consider" against all defendants. Id. at 10–11. In count seven, Stevens seeks relief for interference with prospective economic advantage against all defendants. See id. at 11. Stevens seeks injunctive relief and monetary damages. See id. at 12–13; [D.E. 10] 4.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

3

The standard used to evaluate the sufficiency of the pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co., 637 F.3d at 448; see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Defendants' motions to dismiss require the court to consider North Carolina state law claims. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th

4

Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

## A.

Stevens argues that defendants violated her First Amendment rights at a public forum that Snow Hill held on October 14, 2019. See Compl. at 8–9. Stevens alleges that she was speaking and a representative of "Greene County Training School/South Greene High School Alumni" interrupted her. Id. at 8. Snow Hill then closed the forum and Stevens waited outside. When the meeting resumed, Stevens allegedly was "ignored, and not acknowledged at all by Defendant [] Snow Hill." Id. at 8–9.

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips, 572 F.3d at 180. Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

In order to state a First Amendment retaliation claim under section 1983, a plaintiff must allege that: "(1) [s]he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected [her] First Amendment rights, and (3) there was a causal relationship between [her] protected activity and the defendant's conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (alterations omitted); see Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). A plaintiff "suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine, 411 F.3d at 500; see Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). Moreover, a plaintiff must show that a "defendant's conduct resulted in something more than a 'de minimis inconvenience' to her exercise of First Amendment rights." Balt. Sun Co., 437 F.3d at 416 (quotation omitted); see Constantine, 411 F.3d at 500.

Snow Hill contends that the October 14, 2019 meeting constituted a limited public forum to discuss donating the parcel of land containing the Rosenwald school building and baseball field. See [D.E. 38] 10–14. Thus, Snow Hill contends that it could restrict Stevens's speech to the relevant topic and stop her speaking to preserve civility and decorum. See id. at 12–14. Snow Hill also argues that it did not violate Stevens's First Amendment rights by ignoring her. See id. at 13–14.

Whether Snow Hill impermissibly restricted Stevens's speech depends on the nature of the forum. See Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106–07 (2001); Steinburg v. Chesterfield Cnty. Plan. Comm'n, 527 F.3d 377, 384–85 (4th Cir. 2008). A limited public forum

6

is "a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects." Pleasant Grove City v. Summum, 555 U.S. 460, 470 (2009); see Judson v. Bd. of Supervisors of Mathews Cnty., 436 F. Supp. 3d 852, 864 (E.D. Va.), aff'd, 828 F. App'x 180 (4th Cir. 2020) (per curiam) (unpublished). "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified in reserving its forum for certain groups or for the discussion of certain topics." Good News Club, 533 U.S. at 106 (alteration and quotation omitted); see Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995); Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 392–93 (1993); Steinburg, 527 F.3d at 384–85; Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five, 470 F.3d 1062, 1067–68 (4th Cir. 2006); Judson, 436 F. Supp. 3d at 864. However, any restriction on speech within the limited public forum must be "reasonable and viewpoint neutral." Pleasant Grove, 555 U.S. at 470; see Good News Club, 533 U.S. at 106–07; Judson, 436 F. Supp. 3d at 864–65.

A government entity may limit "its meeting to discussion of specified agenda items and in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business." Steinburg, 527 F.3d at 385; see Judson, 436 F. Supp. 3d at 864. Government entities have a "substantial interest" in conducting meetings "with relative orderliness and fairness to all." Steinburg, 527 F.3d at 385 (citation and quotation omitted); see Collinson v. Gott, 895 F.2d 994, 1000 (4th Cir. 1990) (Phillips, J., concurring). Thus, "officials presiding over such meetings must have discretion, . . . to cut off speech which they reasonably perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner." Steinburg, 527 F.3d at 385 (citation and quotation omitted); see Collinson, 895 F.2d at 1000 (Phillips, J.,

7

concurring); Davison v. Plowman, 247 F. Supp. 3d 767, 777 (E.D. Va. 2017), aff'd, 715 F. App'x 298 (4th Cir. 2018) (per curiam) (unpublished); McClure v. City of Hurricane, No. 3:10-0701, 2011 WL 1485599, at *8 (S.D. W. Va. Apr. 19, 2011) (unpublished). Allowing members of the public to speak unrestricted in a limited public forum risks impinging on the First Amendment rights of other would-be participants. See Davison v. Loudoun Cnty. Bd. of Supervisors, 267 F. Supp. 3d 702, 721 (E.D. Va. 2017); aff'd sub nom., Davison v. Randall, 912 F.3d 666 (4th Cir. 2019); see also Eichenlaub v. Twp. of Ind., 385 F.3d 274, 281 (3d Cir. 2004). Moreover, "there is no constitutional right to force the government to listen to one's views." Steinburg, 527 F.3d at 389 (alterations, citation, and quotations omitted); see Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 283, 288 (1984) ("A person's right to speak is not infringed when government simply ignores that person while listening to others.").

The October 14, 2019 meeting constituted a limited public forum. The Board convened the meeting in order to: "1.) Meet with NC Department of Natural and Cultural Resources Officials; 2.) Tour 602 W. Harper St., the Rosenwald School Building; 3.) Discuss next steps[]" if Snow Hill decided to become involved in preserving the building. [D.E. 38-2] 1 (meeting minutes).

The court assumes without deciding that Stevens engaged in protected speech by speaking at the meeting. Nonetheless, in the limited public forum, Snow Hill could restrict Stevens's speech to the relevant topic. See Good News Club, 533 U.S. at 106; Rosenberger, 515 U.S. at 829; Lamb's Chapel, 508 U.S. at 392–93; Steinburg, 527 F.3d at 384–85; Child Evangelism, 470 F.3d at 1067–68; Judson, 436 F. Supp. 3d at 864. Notably, Snow Hill initially permitted Stevens to speak during the Board's discussion of "next steps" for preserving the Rosenwald school. See [D.E. 38-2] 2. Stevens's remarks, however, did not relate to building preservation. Instead, "she said she owns [the] building but has been locked out since 2004. She spoke at length about her claims and her

8

historical involvement in the structure." Id. Stevens does not allege that she was interrupted due to her viewpoint. Rather, the Board cut off her speech because her speech did not relate to steps for preserving the building, and the Board had the prerogative to stop Stevens to maintain an orderly meeting. Cf. Pleasant Grove, 555 U.S. at 470; Good News Club, 533 U.S. at 106–07; Steinburg, 527 F.3d at 385; Davison, 247 F. Supp. 3d at 777; McClure, 2011 WL 1485599, at *8.

In Judson, the United States District Court for the Eastern District of Virginia dismissed the complaint of a similarly situated plaintiff under Rule 12(b)(6). See Judson, 436 F. Supp. 3d at 868. The plaintiff in Judson brought a First Amendment claim after the county restricted him and other members of the public from speaking about oysters at a county rezoning hearing. See id. at 856–59. The court held that the oyster restriction was viewpoint neutral and that restricting speech to relevant topics is reasonable and appropriate. See id. at 865–68. Given the county's authority to adopt such restrictions, the plaintiff failed to plausibly allege a free speech violation. See id. at 868. Stevens alleges a similar First Amendment violation based on legitimate topic restrictions at a limited public forum. Thus, her First Amendment claim fails.

Stevens also fails to state a claim for violation of the First Amendment when the Board ignored her and did not call upon her once the meeting resumed. See, e.g., Knight, 465 U.S. at 288. Accordingly, Stevens fails to plausibly allege a claim against Snow Hill for violating the First Amendment.

As for LCC and Greene County, Stevens fails to plausibly allege facts demonstrating any adverse action from or causal connection to LCC or Greene County. See [D.E. 32] 8–9; [D.E. 35] 10. As for Greene County, even if a Greene County official or employee violated Stevens's First Amendment rights, Greene County cannot be held liable unless the alleged constitutional violation resulted from an official policy, practice, or custom of Greene County. See Monell, 436 U.S. at

9

690–91; Collinson, 895 F.2d at 1004 (Phillips, J., concurring). Moreover, Stevens fails to plausibly allege any such official policy, practice, or custom.

In response, Stevens asserts new First Amendment claims for alleged violations of freedom of association and assembly. See [D.E. 40] 2, 5; [D.E. 41] 2, 6; [D.E. 42] 3, 7. The court declines to address these claims because Stevens did not properly plead them in her complaint and cannot amend her complaint in a response brief. See, e.g., U.S. ex rel. Walterspiel v. Bayer AG, 639 F. App'x 164, 168 (4th Cir. 2016) (per curiam) (unpublished); Marks v. Dann, 600 F. App'x 81, 89 (4th Cir. 2015) (unpublished); Discovery Commc'ns, LLC v. Comput. Scis. Corp., 570 F. App'x 306, 307 (4th Cir. 2014) (per curiam) (unpublished); Drager v. PLIVA USA, Inc., 741 F.3d 470, 474–75 (4th Cir. 2014) (per curiam) (unpublished); Estrella v. Wells Fargo Bank, N.A., 497 F. App'x 361, 362 (4th Cir. 2012) (per curiam) (unpublished); Francis v. Giacomelli, 588 F.3d 186, 197 (4th Cir. 2009); Cozzarelli v. Inspire Pharms, Inc., 549 F.3d 618, 630 (4th Cir. 2008).

### B.

As for Stevens's defamation claim in count five, Stevens alleges that "former [Snow Hill] Mayor Don Davis made a false statement to Newspaper Standard Laconic Publisher that there were implications of lack of fiduciary responsibility and funds unaccounted." Compl. at 9. Stevens also alleges defamation because LCC locked her out of her office at the Rosenwald building "to advance the derogatory actions of The Town of Snow Hill, The County of Greene and [LCC] in their pursuit to their Inurement and benefit and demise of [] Stevens." Id. at 9–10.

To establish a defamation claim under North Carolina law, a "plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Griffin v. Holden, 180 N.C. App. 129, 133, 636 S.E.2d 298, 302 (2006) (quotation omitted); see Hendrix v. Town of W.

10

Jefferson, 847 S.E.2d 903, 907 (N.C. Ct. App. 2020); Boyce & Isley, PLLC v. Cooper, 211 N.C. App. 469, 478, 710 S.E.2d 309, 317 (2011); Craven v. Cope, 188 N.C. App. 814, 816, 656 S.E.2d 729, 732 (2008); Smith-Price v. Charter Behav. Health Sys., 164 N.C. App. 349, 356, 595 S.E.2d 778, 783 (2004); see also Swinney v. Frontier Airlines, Inc., No. 1:19-cv-808, 2020 WL 3868831, at *5 (M.D.N.C. July 9, 2020) (unpublished); Moore v. Cox, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004). A statement is defamatory if it either, directly or by implication, ascribes dishonesty, fraud, lack of integrity, or reprehensible conduct to the subject of the statement. See Flake v. Greensboro News Co., 212 N.C. 780, 785–86, 195 S.E. 55, 60 (1938); Donovan v. Fiumara, 114 N.C. App. 524, 526, 442 S.E.2d 572, 574 (1994); Beane v. Weiman Co., 5 N.C. App. 276, 277, 168 S.E.2d 236, 237 (1969). A defamatory statement "tend[s] to prejudice another in his reputation, office, trade, business, or means of livelihood." Donovan, 114 N.C. App. at 526, 442 S.E.2d at 574 (quotation omitted); see West v. King's Dep't Store, Inc., 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1998); Flake, 212 N.C. at 786, 195 S.E. at 60.

1.

Snow Hill contends that Stevens fails to plausibly allege a defamation claim against Snow Hill. See [D.E. 38] 14–20. In support, Snow Hill argues that Stevens fails to allege a knowingly false statement of and concerning her. See id. at 15–16. Snow Hill also asserts that Stevens failed to state a basis upon which Snow Hill could be vicariously liable for Davis's alleged statement. See id. at 16–18. Snow Hill also contends that Stevens is a limited-person public figure and fails to plausibly allege that Davis acted with actual malice. See id. at 18–20.

To allege a defamation claim under North Carolina law, a plaintiff must plausibly allege, inter alia, that the defendant's statement was false. See Swinney, 2020 WL 3868831, at *5; Moore, 341 F. Supp. 2d at 574; Hendrix, 847 S.E.2d at 907; Griffin, 180 N.C. App. at 133, 636 S.E.2d at

11

302; <u>Boyce & Isley</u>, 211 N.C. App. at 478, 710 S.E.2d at 317; <u>Craven</u>, 188 N.C. App. at 816, 656 S.E.2d at 732; <u>Smith-Price</u>, 164 N.C. App. at 356, 595 S.E.2d at 783. In considering a motion to dismiss, a court must "credit the plaintiff's allegation of the actual falsity of a statement." <u>Chapin v. Knight-Ridder, Inc.</u>, 993 F.2d 1087, 1092 (4th Cir. 1993) (citation omitted); <u>see Gilmore v. Jones</u>, 370 F. Supp. 3d 630, 671 (W.D. Va. 2019). A plaintiff, however, cannot merely allege falsity in "vague, conclusory terms[.]" <u>Chapin</u>, 993 F.2d at 1092; <u>see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.</u>, 674 F.3d 369, 377 (4th Cir. 2012); <u>Hatfill v. N.Y. Times Co.</u>, 416 F.3d 320, 329 (4th Cir. 2005); <u>Jolly v. Acad. Collection Serv., Inc.</u>, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005).

Stevens fails to plausibly allege falsity. Stevens merely alleges that Davis made a "false statement" implying "lack of fiduciary responsibility and funds unaccounted." Compl. at 9. Stevens does not state what Davis said or the context of his alleged statement. Stevens also does not allege why the statement was false or why anyone would understand the statement to be about her. Merely labeling a statement as "false" does not satisfy <u>Twombly</u> and <u>Iqbal</u>.

Alternatively, even if Stevens plausibly alleged all elements of a defamation claim about Davis's alleged statement, she would need to plausibly allege that Snow Hill was vicariously liable for Davis's statement. North Carolina courts recognize "circumstances under which an employer may be held vicariously liable for defamatory statements made by an employee." <u>Hendrix</u>, 847 S.E.2d at 907; <u>see Gillis v. Great Atl. & Pac. Tea Co.</u>, 223 N.C. 470, 474–75, 27 S.E.2d 283, 286 (1943). Generally, an employer (the principal) can be liable for the torts of its employee (the agent) under the doctrine of respondeat superior in three situations: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal." <u>Hendrix</u>, 847 S.E.2d at 907 (alteration and quotation omitted); <u>see Adkins v. Stilwell</u>,

221 N.C. App. 244, 725 S.E.2d 923, 2012 WL 1995165, at *3 (2012) (unpublished table decision); Matthews v. Food Lion, LLC, 205 N.C. App. 279, 282, 695 S.E.2d 828, 830 (2010).

Ratification is "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Hendrix, 847 S.E.2d at 909 (quotation omitted); see Espinosa v. Martin, 135 N.C. App. 305, 308, 520 S.E.2d 108, 111 (1999). Ratification requires "(1) that at the time of the act relied upon, the principal had full knowledge of all material facts relative to the unauthorized [statement], and (2) that the principal had signified his assent or his intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." Hendrix, 847 S.E.2d at 909 (quotation omitted); see Carolina Equip. & Parts Co. v. Anders, 265 N.C. 393, 400–01, 144 S.E.2d 252, 258 (1965).

Stevens fails to plausibly allege that Snow Hill is vicariously liable for Davis's alleged statement. First, Stevens does not plausibly allege that Snow Hill expressly authorized Davis's statement. Second, Stevens does not plausibly allege that Davis made the statement in the scope of his employment as mayor or in furtherance of Snow Hill's business. In fact, Davis has not served as mayor since 2009.[3] Moreover, even if Davis made the statement in the scope of his employment as mayor, the one-year statute of limitations for defamation under North Carolina law bars the claim. See N.C. Gen. Stat. § 1-54(3).[4] Third, Stevens does not plausibly allege that Snow Hill ratified

---

[3] See 10/03/2009 Official Municipal Election Results – Greene, North Carolina State Board of Elections, er.ncsbe.gov (search Election field for "11/03/2009," County field for "Greene," Office field for "All Local," and Contest field for "Town of Snow Hill Mayor") (last visited June 4, 2021) (listing Dennis Liles as winner of the mayoral race).

[4] Stevens responds that statutes of limitations are irrelevant to "actions that started in prior years, but are consecutive, collaborative, and ensure to date[.]" [D.E. 41] 2; [D.E. 42] 2. The court rejects Stevens's argument.

13

Davis's statement, that Davis purported to speak on behalf of Snow Hill, or that Snow Hill had

knowledge of Davis's statement. Thus, Davis has not plausibly alleged Snow Hill's vicarious

liability.

Alternatively, a defendant must publish a statement with actual malice in order to defame

a limited-purpose public figure. See Carr v. Forbes, Inc., 259 F.3d 273, 278 (4th Cir. 2001); see also

Gertz v. Robert Welch, Inc., 418 U.S. 323, 347–48, 351 (1974); Hatfill v. N.Y. Times Co., 488 F.

Supp. 2d 522, 527 (E.D. Va. 2007). A party publishes a statement with actual malice where the

party has "knowledge that it was false" or acts with "reckless disregard of whether it was false or

not." N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964); see Gilmore, 370 F. Supp. 3d at

671.

"When a person thrusts [herself] into the forefront of public debate, [she] is treated as a

limited-purpose public figure for purposes of comment on issues arising from that debate." Carr,

259 F.3d at 278 (quotations omitted). A person is a limited-purpose public figure if (1) "a public

controversy gave rise to the defamatory statement[,]" and (2) "the plaintiff's participation in that

controversy sufficed to establish him as a public figure within the context of that public

controversy." Id. at 278; see Foretich v. Cap. Cities/ABC, Inc., 37 F.3d 1541, 1553 (4th Cir. 1994).

A public controversy is "a dispute that in fact has received public attention because its ramifications

will be felt by persons who are not direct participants." Carr, 259 F.3d at 279 (quotation omitted);

see Foretich, 37 F.3d at 1554. A public figure is one who "voluntarily inject[s herself] or [is] drawn

into a particular public controversy" — in other words, "essentially one who has assumed a role of

public prominence in the broad question of concern." Carr, 259 F.3d at 280 (quotations omitted);

see Hutchinson v. Proxmire, 443 U.S. 111, 135–36 (1979); Gertz, 418 U.S. at 351; Gilmore, 370 F.

Supp. 3d at 667; Eramo v. Rolling Stone, LLC, 209 F. Supp. 3d 862, 869 (W.D. Va. 2016). A five-

factor test informs whether a plaintiff has become part of a controversy sufficient to trigger limited-purpose public figure status: "whether (1) the plaintiff has access to channels of effective communication, (2) the plaintiff voluntarily assumed a role of special prominence in the controversy, (3) the plaintiff sought to influence the resolution of the controversy, (4) the controversy existed prior to the publication of the defamatory statements, and (5) the plaintiff retained public figure status at the time of the alleged defamation." Carr, 259 F.3d at 280; see Fitzgerald v. Penthouse Int'l, Ltd., 691 F.2d 666, 668 (4th Cir. 1982); Gilmore, 370 F. Supp. 3d at 667; Hatfill, 488 F. Supp. 2d at 528; Eramo, 209 F. Supp. 3d at 869. The second and third factors are most important. See Carr, 259 F.3d at 280; Hatfill, 488 F. Supp. 2d at 529; see also Reuber v. Food Chem. News, Inc., 925 F.2d 703, 709 (4th Cir. 1991) (en banc).

Stevens is a limited-purpose public figure. Stevens concedes that her involvement in a public controversy gave rise to Davis's statement. See Compl. at 9–10. Stevens also concedes that she fundraised to preserve the school, founded the Rosenwald Center, nominated the school to the National Register of Historic Places, and described herself as an "Activist, Advocate [and] Community Development Leader." [D.E. 10] 5; see Compl. at 9–10. Stevens also asserts that preserving the Rosenwald school would promote tourism and development in Snow Hill, which would benefit the community. See Compl. at 9–10; [D.E. 10] 5. As a limited-purpose public figure, Stevens must plausibly allege that Davis made the statement with actual malice. Stevens, however, has failed to do so. Accordingly, Stevens fails to state a claim upon which relief can be granted for defamation against Snow Hill.[5]

---

[5] Davis does not connect LCC or Greene County to Davis's alleged statement. Accordingly, the court dismisses any defamation claim against LCC or Greene County based on Davis's statement.

2.

As for Stevens's defamation claim against LCC and Greene County for being locked out of the Rosenwald building, LCC and Greene County contend that Stevens has failed to state a defamation claim. The court agrees. First, Stevens fails to plausibly allege a right to use any office at the Rosenwald school. Stevens merely asserts that in 1999 following Hurricane Floyd, the Greene County Board of Education gave her the building. See Compl. at 5. However, under the North Carolina statute of frauds, a transfer of real property is void unless it is in writing. See N.C. Gen. Stat. § 22-2; Barrett v. Coston, 261 N.C. App. 311, 314, 820 S.E.2d 573, 575 (2018). Stevens has not plausibly alleged a written transfer of the Rosenwald building to her. Thus, Stevens has not plausibly alleged a right to the property. In fact, the public record demonstrates that Greene County transferred ownership of the property to LCC in 1997, which is two years before Stevens claims she took ownership. See [D.E. 32-1, 35-2]; cf. [D.E. 32-3, 32-4, 43-1].

Alternatively, even accepting Stevens's allegation about ownership as true, she fails to state a claim for defamation against LCC or Greene County. The act of locking someone out of a building does not communicate anything or make a statement on the part of any defendant.

Alternatively, even if Stevens plausibly alleged a defamation claim from the 2004 lockout, the one-year statute of limitations bars the claim. See N.C. Gen. Stat. § 1-54(3). A party must commence an action for defamation "within one year from the time the action accrues, . . . and the action accrues at the date of the publication of the defamatory words[.]" Gibson v. Mut. Life Ins. Co. of N.Y., 121 N.C. App. 284, 287, 465 S.E.2d 56, 58 (1996) (emphasis and quotation omitted); see Price v. J. C. Penney Co., 26 N.C. App. 249, 252, 216 S.E.2d 154, 156 (1975). Stevens alleges that defendants locked her out of the Rosenwald building in 2004, meaning that the statute of limitations for any defamation claim arising from the lockout expired in 2005. See Compl. at 3.

Accordingly, Stevens fails to state a claim for defamation upon which relief can be granted against LCC and Greene County.

C.

As for Stevens's claim in count six, Stevens alleges a vague claim of "discrimination and failure to consider." Id. at 10. Specifically, Stevens alleges that defendants discriminated against her as a "Woman, Activist, Advocate, Human Capital, [and] CEO of a Community Development Corporation" by "treating [Stevens] . . . differently from other nonprofit leaders," "excluding" Stevens, and "refusing to acknowledge and act on requests to be heard and given opportunity as other Nonprofit Directors were given." Id. Essentially, Stevens alleges that defendants failed to appreciate or support her efforts to preserve the Rosenwald building.

LCC and Greene County construe count six as a Title VII claim. Snow Hill construes it as a claim under 42 U.S.C. § 1981 and the Equal Protection Clause. See [D.E. 32] 11–13; [D.E. 35] 14–16; [D.E. 38] 20–23. Under all theories, the claim fails.

1.

LCC and Greene County contend that Stevens fails to plausibly allege sex or race discrimination under Title VII in count six. See [D.E. 32] 11–13; [D.E. 35] 14–16. In support, LCC and Greene County argue that to the extent to which Stevens intended to file a discrimination claim under Title VII, she has not plausibly alleged such a claim. See [D.E. 32] 12; [D.E. 35] 15. LCC and Greene County also assert that Stevens does not allege that she ever applied for employment with defendants. See [D.E. 32] 13; [D.E. 35] 15–16. Stevens responds that LCC and Greene County treated her differently than her white male counterparts. See [D.E. 40] 4–5, [D.E. 42] 7–9.

A Title VII plaintiff is not required to plead a prima facie case to survive a motion to dismiss. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510–15 (2002). Nonetheless, Swierkiewicz "left

17

untouched the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006), overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (en banc) (emphasis and quotation omitted); see McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015). In order to state a discrimination claim under Title VII, Stevens must allege facts showing that a defendant employer failed or refused to hire, discharged, or otherwise discriminated against her in the conditions of her employment because of her race, sex, or other protected characteristic. See 42 U.S.C. § 2000e-2(a)(1). Title VII also requires Stevens to file a charge of discrimination with the EEOC, generally within 180 days after the unlawful employment practice occurred. See 42 U.S.C. § 2000e-5(e)(1). Only then may Stevens bring such a claim in federal court. See id. § 2000e-5(f)(1).

Stevens alleges that she suffered discrimination due to her race or sex. See Compl. at 10. Specifically, Stevens alleges that she was not hired "as CEO of Town of Snow Hill, County of Greene's only Community Development Corporation at that time." Id. Stevens, however, does not allege that she ever applied for the position or that she was qualified for it. Thus, Stevens has failed to state a Title VII claim against LCC or Greene County. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 n.6 (4th Cir. 2005); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 444 n.12 (E.D.N.C. 2012). To the extent Stevens seeks to assert a Title VII claim against the Snow Hill defendants, the same conclusion applies. See, e.g., Diamond, 416 F.3d at 319 n.6; Holley, 846 F. Supp. 2d at 444 n.12.

2.

To the extent Stevens seeks relief from Snow Hill under 42 U.S.C. § 1981, Snow Hill argues that Stevens has failed to plausibly allege that she was discriminated against on the basis of race in making or enforcing contracts. See [D.E. 38] 20–22. As for the Equal Protection Clause, Snow Hill

contends that Stevens has failed to plausibly allege race or sex discrimination in comparison to other nonprofit leaders. See id. at 22–23. Stevens responds that Snow Hill treated her differently than her white male counterparts and discriminated against her as an African American female activist. See [D.E. 41] 7–9.

Section 1981 protects people against racial discrimination when making and enforcing contracts. See 42 U.S.C. § 1981; Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1014–20 (2020); CBOCS West, Inc. v. Humphries, 553 U.S. 442, 446–56 (2008); Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474–80 (2006); Woods v. City of Greensboro, 855 F.3d 639, 645 (4th Cir. 2017). As with a Title VII claim, Stevens need not plead a prima facie case, but must plausibly allege discrimination under governing law. See Woods, 855 F.3d at 648; cf. Swierkiewicz, 534 U.S. at 510–15; McCleary-Evans, 780 F.3d at 585; Jordan, 458 F.3d at 346. In order to state a prima facie case for discrimination under section 1981, Stevens must plausibly allege: "(1) [s]he is a member of a protected class; (2) [s]he sought to enter into a contractual relationship with the defendant; (3) [s]he met the defendant's ordinary requirements to [contract] ordinarily provided by the defendant to other similarly situated nonminority contracting parties; and (4) [s]he was denied the opportunity to contract [] that was otherwise afforded to [nonminority contracting parties]." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

Stevens alleges that she is an African American female who sought to contract with Snow Hill to preserve the Rosenwald building. See Compl. at 10. Stevens also alleges that Snow Hill gave other nonprofit directors opportunities that Snow Hill denied to her. See id. Stevens, however, does not allege any facts regarding the racial or gender identities of the other nonprofit directors. Moreover, Stevens does not plead any specific facts about the opportunities that Snow Hill allegedly denied her or contracts that Snow Hill entered with anyone else. Thus, Stevens does not plausibly

19

allege whether she might have entered into a contract with Snow Hill, whether Snow Hill entered into a similar contract with a nonminority, or whether and why Snow Hill denied her such a contractual opportunity. Accordingly, Stevens has failed to plausibly allege a claim against Snow Hill under section 1981. The same conclusion applies to any section 1981 claim against LCC or Greene County.

The Equal Protection Clause of the Fourteenth Amendment prohibits a state actor from denying a person the equal protection of the laws. See U.S. Const. Amend. XIV, § 1. To state an equal protection claim, Stevens must allege 1) that she has been treated differently from others with whom she is similarly situated, and 2) that the unequal treatment was the result of intentional or purposeful discrimination. See Stop Reckless Econ. Instability Caused by Democrats v. Fed. Election Comm'n, 814 F.3d 221, 233 (4th Cir. 2016); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); Robinson v. E. Carolina Univ., 329 F. Supp. 3d 156, 181 (E.D.N.C. 2018); Ragland v. N.C. State Bd. of Educ., No. 5:16-CV-288-FL, 2017 WL 2963447, at *4 (E.D.N.C. July 11, 2017) (unpublished).

Stevens alleges that Snow Hill treated her differently from other nonprofit leaders. See Compl. at 10. Stevens, however, does not plausibly allege any similarly situated comparator or any facts that would allow this court to determine that Snow Hill's treatment of Stevens was based on purposeful discrimination because of her race or sex. Rather, Stevens only asserts conclusory and speculative allegations of discrimination. Accordingly, the court dismisses count six for failure to state a claim upon which relief can be granted. The same conclusion applies to any Equal Protection claim against LCC or Greene County.

### D.

As for Stevens's claim in count seven, Stevens alleges interference with prospective

economic advantage. See id. at 11. Stevens claims that LCC "[i]nterfered with Prospective Economic Advantage as a result of being locked out of [the Rosenwald school]." Id. at 3. Stevens also alleges that defendants precluded her from pursuing economic and business opportunities concerning preservation of the Rosenwald school and baseball field. See id. at 11. In support, Stevens cites "[LCC] being interested in donating said property to [] Snow Hill" and the availability of a "PARTF" grant. Id.

To allege tortious interference with prospective economic advantage under North Carolina law, a plaintiff must show that (1) a prospective contract with a third party existed, (2) the tortfeasor "maliciously induc[ed]" the third party "not to enter a contract . . . which he would have entered into but for the interference," and (3) the interference proximately caused damages. Dalton v. Camp, 353 N.C. 647, 654, 548 S.E.2d 704, 709 (2001) (quotation omitted); see Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016); Coleman v. Whisnant, 225 N.C. 494, 506–07, 35 S.E.2d 647, 655–56 (1945); Radcliffe v. Avenel Homeowners Ass'n, Inc., 248 N.C. App. 541, 567, 789 S.E.2d 893, 911 (2016); Walker v. Sloan, 137 N.C. App. 387, 392–93, 529 S.E.2d 236, 241–42 (2000).

The first element requires a party to demonstrate the existence of a prospective contract. See, e.g., Dalton, 353 N.C. at 654–55, 548 S.E.2d at 710. A prospective contract exists when there is a reasonable expectation that the third party, but for the interference, would have entered into the contract. See, e.g., Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc., 330 N.C. 666, 680–81, 412 S.E.2d 636, 644–45 (1992); accord Dalton, 353 N.C. at 654–55, 548 S.E.2d at 710; Coleman, 225 N.C. at 506, 35 S.E.2d at 656. The "expectation of a continuing business relationship," alone, is not sufficient to support a tortious interference claim. Dalton, 353 N.C. at 655, 548 S.E.2d at 710; see Beverage Sys. of the Carolinas, 368 N.C. at 701, 784 S.E.2d at 463; accord The Bldg. Ctr., Inc.

21

v. Carter Lumber, Inc., No. 16 CVS 4186, 2016 WL 6142993, at \*8 (N.C. Super. Ct. Oct. 21, 2016) (unpublished).

The second element requires that a plaintiff's "complaint must admit of no motive for interference other than malice." Beck v. City of Durham, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002) (quotation omitted); see Welch-Walker v. Guilford Cnty. Bd. of Educ., No. 1:12CV149, 2014 WL 6997596, at \*7 & n.5 (M.D.N.C. Dec. 10, 2014) (unpublished); Jones v. Am. Airlines, Inc., No. 5:08-CV-236-BR, 2008 WL 9411160, at \*5 (E.D.N.C. Oct. 16, 2008) (unpublished); Pinewood Homes, Inc. v. Harris, 184 N.C. App. 597, 605, 646 S.E.2d 826, 832–33 (2007); Filmar Racing, Inc. v. Stewart, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001); Privette v. Univ. of N.C. at Chapel Hill, 96 N.C. App. 124, 134–35, 385 S.E.2d 185, 191 (1989). "[M]erely alleging an improper actual or primary motive will not suffice." Benjamin v. Sparks, 173 F. Supp. 3d 272, 290 (E.D.N.C. 2016).

Defendants contend that Stevens has not plausibly alleged a claim for tortious interference with prospective economic advantage because she fails to state any facts about a third party or a contract. See [D.E. 32] 14; [D.E. 35] 17–18; [D.E. 38] 25. Furthermore, Snow Hill argues that Stevens fails to allege malice on the part of the defendants. See [D.E. 38] 26–27. Moreover, LCC and Greene County argue that Stevens has no property interest in the Rosenwald building on which to base a claim and that the three-year statute of limitations bars Stevens's claim. See [D.E. 32] 14–15; [D.E. 35] 16–18.

As for being locked out of the Rosenwald building, Stevens has not plausibly alleged a claim for tortious interference. Stevens had no property interest in the school building. Thus, she cannot plausibly allege that defendants interfered with her ability to enter into contracts concerning the Rosenwald school. Alternatively, and in any event, the three-year statute of limitations bars any such

22

claim concerning the alleged 2004 incident. See N.C. Gen. Stat. § 1-52(5); Dickinson v. Univ. of N.C., 91 F. Supp. 3d 755, 766 (M.D.N.C. 2015); Glynne v. Wilson Med. Ctr., 236 N.C. App. 42, 48, 762 S.E.2d 645, 649 (2014).

As for Stevens's remaining claims regarding her preservation work and grants, Stevens fails to identify any third parties or prospective contracts. Moreover, Stevens's allegations of business expectations in tourism or preservation are insufficient to state a claim. Furthermore, Stevens does not plausibly allege malice. Accordingly, Stevens fails to state a claim for tortious interference with prospective economic advantage, and the court dismisses count seven.

E.

Greene County and Snow Hill contend that even if either could be held liable for Stevens's state law claims, the doctrine of governmental immunity bars such claims against them. See [D.E. 35] 8–10; [D.E. 38] 27–29. Under North Carolina law, "[g]overnmental immunity is that portion of the [s]tate's sovereign immunity which extends to local governments." Wray v. City of Greensboro, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017). Governmental immunity provides that a local governmental entity such as a county or town is immune from liability for the torts of its officers and employees committed while they are performing governmental functions. See Galligan v. Town of Chapel Hill, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970); Sellers v. Rodriguez, 149 N.C. App. 619, 623, 561 S.E.2d 336, 339 (2002).

Generally, governmental immunity bars tort lawsuits against the governmental entity absent waiver. See Wray, 370 N.C. at 47, 802 S.E.2d at 898; Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). A county or town may waive governmental immunity by purchasing insurance, but any waiver is limited to the extent of the insurance coverage. See, e.g., N.C. Gen. Stat. §153A-435(a); Evans v. Hous. Auth., 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004); Satorre v. New Hanover

23

Cnty. Bd. of Comm'rs, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004). If "the insurance policy does not indemnify [the] defendant against the negligent acts alleged in plaintiff's complaint, defendant has not waived its sovereign immunity." Doe v. Jenkins, 144 N.C. App. 131, 135, 547 S.E.2d 124, 127 (2001); see Dawes v. Nash Cnty., 357 N.C. 442, 445–46, 449, 584 S.E.2d 760, 763, 765 (2003); Est. of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs., 204 N.C. App. 338, 341, 694 S.E.2d 405, 408 (2010). "In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action" under state law. Wray, 370 N.C. at 47, 802 S.E.2d at 899.

Stevens does not allege a waiver of governmental immunity. Thus, Stevens has failed to state causes of action under state law against Snow Hill or Greene County.

### III.

In sum, the court GRANTS defendants' motions to dismiss [D.E. 31, 36, 37]. The court DENIES as meritless plaintiff's motion for entry of default judgment against defendant Greene County [D.E. 45]. Cf. [D.E. 46]. The case has been pending for years. Plaintiff has not moved to amend the complaint to address its many deficiencies and even the new arguments in her response brief merely suggest new meritless claims. Thus, the court DISMISSES the complaint WITH PREJUDICE.

SO ORDERED. This _8_ day of June 2021.

JAMES C. DEVER III
United States District Judge